UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SUSAN K. JENNINGS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO.   C04-5396FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 16, 2005 |

Plaintiff, Susan K. Jennings, has brought this matter for judicial review of the denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-eight years old.[1] Tr. 71.  She graduated from high school and completed one year of college. Tr. 67.  She has past work experience as a secretary and reservations clerk. Tr. 62.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1  Plaintiff filed an application for disability insurance on November 26, 2001, alleging disability as of
2  October 15, 2000, due to memory loss resulting from an aneurysm that occurred in early November 1995.
3  Tr. 53, 61. Her application was denied initially and on reconsideration. Tr. 20-22, 28. Plaintiff requested a
4  hearing, which was held on September 3, 2003, before an administrative law judge ("ALJ"). Tr. 199. At the
5  hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 199-216.
6  On September 4, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant
7  part as follows:

    (1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

    (2) at step two, plaintiff had a "severe" impairment consisting of a cognitive disorder;

    (3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

    (4) at step four, plaintiff had no exertional limitations, but was limited to simple, repetitive work, which precluded her from performing her past relevant work; and

    (5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 17-18. Plaintiff's request for review was denied by the Appeals Council on June 4, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 4-6; 20 C.F.R. § 404.981.

On July 12, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). She argues that decision should be reversed and remanded for an award of benefits, because the ALJ failed to find her disabled at step five of the disability evaluation process under the Commissioner's Medical Vocational Guidelines (the "Grids"). 20 C.F.R. Pt. 404, Subpt. P, App. 2. For the reasons set forth below, however, the undersigned recommends the ALJ's decision be affirmed.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520. If a disability determination "cannot be made on the basis of medical factors alone" at step three of the evaluation process, the ALJ must identify the claimant's "functional limitations and restrictions," and then assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

If the claimant cannot perform his or her past relevant work at step four of the disability evaluation process, at step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e). There are two ways that the ALJ can to this: "(a) by the testimony of a vocational expert, *or* (b) by reference to the [Commissioner's] Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Tackett, 180 F.3d at 1100-1101 (emphasis in original); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ's ability to rely on the Grids is limited, however, as noted by the Ninth Circuit in describing their purpose and function:

> In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. . . .
>
> The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work."[2] . . . Each grid presents various combinations of factors relevant to a

---

[2] However, "[I]f a claimant is found able to work the full range of heavy work this is 'generally sufficient for a finding of not disabled.'" Tackett, 180 F.3d at 1101 n.5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00).

> claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, . . . the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. See id.
>
> This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. . . .
>
> The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.

Tackett, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).

If, on the other hand, a claimant has "significant non-exertional impairments," those impairments "may make reliance on the grids inappropriate."[3] Id. at 1101-02; see also Osenbrock, 240 F.3d at 1162 (ALJ cannot rely on Grids where claimant has significant non-exertional impairments); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (Grids inapplicable when they do not completely describe claimant's abilities and limitations). Proper use of the Grids depends in each case upon the nature and extent of the claimant's impairments and limitations:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment . . . In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment . . . the grids do not resolve the disability question . . . other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. . . . If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." . . . In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (internal citations and footnotes omitted).

Here, the ALJ determined that plaintiff did not have any exertional limitations, finding instead that she "should be limited to simple repetitive work only" due to a memory impairment. Tr. 16. At step four of the disability evaluation process, the ALJ found that "[w]ith even a mild memory problem," plaintiff would

---

[3]"Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 4

not be able to return to her past relevant work as a secretary, which she had performed for most of her adult life. Id. The ALJ then set forth his step five analysis, which reads in relevant part:

> Born on April 9, 1947, the claimant is currently 56 years old. This is defined in the regulations as an individual of advance age (20 CFR § 404.1563). She has more than a high school (or high school equivalent) education. The impartial vocational expert testified that, with a memory impairment, the claimant has no transferable skills. The undersigned concurs with the testimony of the vocational expert and finds the claimant has no easily transferable skills.
>
> . . . If the claimant's nonexertional limitations do not significantly compromise the ability to perform work at all exertional levels, section 204.00, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of not disabled would be appropriate. If the claimant's capacity to work at all levels were significantly compromised, the remaining work that she would functionally be capable of performing would be considered in combination with the claimant's age, education, and work experience to determine whether a work adjustment could be made.
>
> The claimant's ability to work is significantly compromised at all exertional levels due to her non-exertional limitation.

Tr. 16-17. Accordingly, the ALJ relied on the testimony of the vocational expert to find plaintiff capable of performing other jobs existing in significant numbers in the national economy. Tr. 17.

Plaintiff argues the ALJ erred in failing to refer to the Grids as a "framework for decision making" because her only impairments were nonexertional. Plaintiff's Opening Brief, p. 5. She asserts the ALJ so erred, because the Grids direct that they be used as such in those cases where they do not apply. However, plaintiff's argument clearly is contrary to the Commissioner's regulations and Ninth Circuit case law. See Cooper, 880 F.2d at 1155 (where claimant solely has nonexertional impairment, grids do not resolve the disability question and other testimony is required); see also Moore, 216 F.3d at 869 (Grids inapplicable when they do not completely describe claimant's abilities and limitations). It is only where the claimant has both exertional and nonexertional impairments that the Grids are used as a framework for decision making.[4] Cooper, 880 F.2d at 1155. Here, because plaintiff has only a nonexertional impairment, the Grids are not

---

[4] Indeed, 20 C.F.R. § 404.1569a itself makes this distinction: "(c) . . . (2) If your impairment(s) and related symptoms, such as pain, only affect your ability to perform the nonexertional aspects of work-related activities, the rules in appendix 2 do not direct factual conclusions of disabled or not disabled. The determination as to whether disability exists will be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in appendix 2.
 (d) Combined exertional and nonexertional limitations. When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we consider that you have a combination of exertional and nonexertional limitations or restrictions. If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision."

REPORT AND RECOMMENDATION
Page - 5

applicable, and therefore the ALJ did not err in declining to use them.

Plaintiff asserts that because the record contains no physical capacities evaluation, and because the only evidence in the record of her functional exertional capacity is evidence showing she performed past work at the sedentary and light level, the ALJ erred in concluding she was capable of performing sustained physical work activity at the medium level.[5] However, plaintiff has it backwards. She has the burden of proving she "suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." Tackett, 180 F.3d at 1098. At least with respect to her exertional capacity, plaintiff has provided no evidence that she suffers from any significant, i.e. "severe," physical impairment.[6] The ALJ, therefore, did not err in finding she had no exertional limitations.

As noted above, plaintiff graduated from high school and completed one year of college. Tr. 67. Plaintiff nevertheless argues the ALJ incorrectly designated her level of education as being "more than a high school (or high school equivalent) education" (Tr. 16), instead of finding that she had only a "limited education." Had the ALJ done so, plaintiff asserts, the Grids would have directed she be found disabled even if she could perform medium level physical work. Even assuming the Grids do apply in this case (which, as explained above, they do not), plaintiff's argument fails.

The Social Security Regulations define the various levels of education, a vocational factor which is used by the Commissioner to determine a claimant's ability to work. A "high school education and above" is defined as "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. § 404.1564(b)(4). In general, a claimant with this level of education

---

[5]This argument also is important to plaintiff's case for another reason. Under the Commissioner's regulations, if a claimant is of advanced age (i.e., age 55 or older), and has a "severe" impairment that limits the claimant to either sedentary or light work, the claimant will be found to be unable to make an adjustment to other work, unless he or she has skills that can be transferred to other skilled or semiskilled work that he or she can do despite his or her impairments. 20 C.F.R. 404.1568(d)(4). Here, plaintiff was of advanced age (56) at the time the ALJ issued his decision, and she was found to have no transferrable skills. Tr. 16. Thus, if plaintiff can establish she is limited to sedentary or light work, the ALJ would be required to find her disabled.

[6]Plaintiff argues she did testify to having hand tremors (see Tr. 204-05), and the record does contain one examination report from April 2003, which does make a reference to left "hand tremors." Tr. 190. That same examination report, however, notes no problems or limitations with respect to stability, range of motion or strength in plaintiff's upper extremities. Id. Plaintiff also has reported having no physical difficulties in performing her activities of daily living (including doing household chores several times a week, shopping and driving). Tr. 89-92. The ALJ, furthermore, found that plaintiff's hand tremors were a non-severe impairment, based on the fact that such tremors were neither observed at the hearing nor documented in plaintiff's medical records (although, as noted above, there was one such reference in those records), and the fact that plaintiff took no medication for that condition and appeared not to have sought any treatment for it. Tr. 15. Plaintiff has not challenged that finding.

REPORT AND RECOMMENDATION
Page - 6

is considered able to do "semi-skilled through skilled work." Id.  A "limited education," on the other hand, is defined as the "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3).  A "7th grade through the 11th grade level of formal education" generally is considered a limited education. Id.  In addition, the Commissioner takes the following factors into account as well when evaluating a claimant's educational level:

> How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting.  Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work.  Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities.  These may be higher or lower.  However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.

20 C.F.R. § 404.1564(b).

Plaintiff argues the ALJ should have found her education limited, because it was "clearly remote," in that "the skills she had acquired and displayed were impacted to such a severe degree by her impairment, in the view of the ALJ, as to *preclude* return to her past relevant work," and that the ALJ found she had no transferrable skills. Plaintiff's Opening Brief, p. 8 (emphasis in original).  However, the ALJ found she had no transferrable skills due to her mental impairment (Tr. 16), not because of the "remoteness" of her formal education.  There also is no evidence that any skills plaintiff acquired from her formal education were no longer useful or meaningful because of the amount of time that had passed between the completion of her education and the beginning of her mental impairment, which is what 20 C.F.R. § 404.1564(b) appears to require to find a claimant's education no longer useful or meaningful.  Thus, because there is no evidence in the record to contradict her numerical grade level, it properly was used by the ALJ.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was not disabled and affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

1  objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

2  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 16,**

3  **2005**, as noted in the caption.

4         DATED this 22nd day of August, 2005.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge